IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:10-cv-265

MICHAEL BATEMAN, VIRGIL GREEN, )
FORREST MINGES, JR., GRNC/FFE, )
INC., and SECOND AMENDMENT )
FOUNDATION, INC., )
                                                         )
              Plaintiffs, )
                                                         )          **COMPLAINT**
     v. )

BEVERLY PERDUE, REUBEN F. )
YOUNG, STOKES COUNTY, and CITY )
OF KING, )
                                                         )
              Defendants.

**COME NOW** the plaintiffs, Michael Bateman, Virgil Green, Forrest Minges, Jr., GRNC/FFE, Inc., and Second Amendment Foundation, Inc., by and through undersigned counsel, and complain of the defendants as follows:

THE PARTIES

1. Plaintiff Michael Bateman is a natural person and a citizen of the United States and of the State of North Carolina.

2. Plaintiff Virgil Green is a natural person and a citizen of the United States and of the State of North Carolina.

3. Plaintiff Forrest Minges, Jr., is a natural person and a citizen of the United States and of the State of North Carolina.

4. Plaintiff GRNC/FFE, Inc. (d/b/a "Grass Roots North Carolina") is an all-volunteer 501(c)(4) member-funded organization, incorporated under the laws of North Carolina, dedicated

to preserving individual freedoms guaranteed by the United States Constitution. Founded in 1994, GRNC/FFE routinely engages in grass roots mobilization, principally for and against legislation impacting Second Amendment issues. Additionally, GRNC/FFE performs Second Amendment voter education and through its political action committee, the GRNC Political Victory Fund, election action to further pertinent legislative goals.

5. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including North Carolina. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

6. Defendant Beverly Perdue is the Governor of the State of North Carolina, and is responsible for executing and administering North Carolina's laws, customs, practices, and policies at issue in this lawsuit. Defendant Perdue is sued in her official and individual capacities.

7. Defendant Reuben F. Young is the Secretary of North Carolina's Department of Crime Control and Public Safety, and is responsible for executing and administering North Carolina's laws, customs, practices, and policies at issue in this lawsuit. Defendant Young is responsible for overseeing the Department's Emergency Management Division, the North Carolina National Guard, and the North Carolina State Highway Patrol, among other agencies primarily tasked with restoring and maintaining public order during states of emergency. Young is sued in his official and individual capacities.

8. Defendant Stokes County is a governmental entity organized under the Constitution and laws of the State of North Carolina, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit.

9. Defendant City of King is a governmental entity organized under the Constitution and laws of the State of North Carolina, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

11. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

12. North Carolina is frequently beset by hurricanes, tropical storms, and other severe weather events endangering public safety.

13. North Carolina's population is generally peaceful, but as in any human population, incidents of public disorder may occur from time to time.

14. North Carolina Gen. Stat. § 14-288.1(10) defines a "state of emergency" as "[t]he condition that exists whenever, during times of public crisis, disaster, rioting, catastrophe, or similar public emergency, public safety authorities are unable to maintain public order or afford adequate protection for lives or property, or whenever the occurrence of any such condition is imminent."

15. A "state of emergency" may be declared by the Governor, or by any municipality or county. Additionally, the chairman of a county board of commissioners may extend the provisions of a state of emergency into his or her county. N.C. Gen. Stat. §§ 14-288.12–15.

16. States of emergency are frequently declared in North Carolina. Since September 1, 2004, the Governors of North Carolina have declared at least a dozen states of emergency, usually encompassing the entire state. Executive Order 65 (Hurricane Frances, Sept. 1, 2004); Executive Order 68 (Hurricane Ivan, Sept. 16, 2004); Executive Order 70 (Hurricane Jeanne, Sept. 27, 2004); Executive Order 71 (ice and snow, Wake County, Jan. 19, 2005); Executive Order 82 (Hurricane Katrina, Sept. 3, 2005); Executive Order 88 (Hurricane Ophelia, Sept. 10, 2005); Executive Order 94 (Hurricanes Katrina and Ophelia, Nov. 28, 2005); Executive Order 107 (Tropical Storm Ernesto, Aug. 31, 2006); Executive Order 113 (Dare County severe weather, Nov. 29, 2006); Executive Order 142 (Hyde, Tyrrell, Washington Counties, wildfire, June 6, 2008); Executive Order 144 (Tropical Storm Hanna, Hurricane Ike, Sept. 4, 2008); Executive Order 47 (winter storm, January 10, 2010). Governors typically delegate their emergency powers under such declarations to the Secretary of the Department of Crime Control and Public Safety.

17. North Carolina Gen. Stat. § 14-288.7(a) provides, in pertinent part, "it is unlawful for any person to transport or possess off his own premises any dangerous weapon or substance in any area: (1) In which a declared state of emergency exists; or (2) Within the immediate vicinity of which a riot is occurring." Violation of this provision is a Class 1 misdemeanor. N.C. Gen. Stat. § 14-288.7(c). The term "[d]angerous weapon or substance" includes "[a]ny deadly weapon, ammunition . . ." N.C. Gen. Stat. § 14-288.1(2).

18. Declarations of states of emergency may contain "prohibitions and restrictions . . . (4) Upon the possession, transportation, sale, purchase, storage, and use of dangerous weapons and substances . . ." N.C. Gen. Stat. § 14-288.12(b) (municipal declarations); *accord* N.C. Gen. Stat. §§ 14-288.13(b) (county declarations), 14-288.15(d) (gubernatorial declarations). Violations of such prohibitions and restrictions declared by the Governor are punishable as Class 2 misdemeanors. N.C. Gen. Stat. § 14-288.15(e). Violations of such prohibitions and restrictions declared by a municipality or county are punishable as Class 3 misdemeanors. N.C. Gen. Stat. §§ 14-288.12(e), 14-288.13(d), 14-288.14(e).

19. On or about January 30, 2010, Defendant Perdue issued Executive Order 47, declaring a state of emergency throughout the entire state of North Carolina for up to thirty days. Defendant Perdue delegated her emergency powers to Defendant Young.

20. On or about February 5, 2010, Defendants City of King and Stokes County declared a state of emergency. Defendant City of King's proclamation forbade the sale or purchase of firearms and ammunition, as well as the possession of firearms and ammunition off an individual's premises.

21. Plaintiffs Michael Bateman and Forrest Minges, Jr., reside in Washington and New Bern, North Carolina, respectively. Both are avid hunters. The towns of Washington and New Bern are in North Carolina's coastal region, and are thus particularly impacted by hurricanes and tropical storms.

22. Plaintiff Virgil Green resides in an unincorporated area of Stokes County, just outside the city limits of King. Green must frequently visit and travel through the City of King.

23. Plaintiffs Bateman, Green, and Minges have repeatedly been impacted by declared states of emergency curtailing their ability to possess, buy, and sell firearms and

ammunition. During declared states of emergency, plaintiffs otherwise would carry functional handguns in public for self-defense, and would buy and sell guns and ammunition, but refrain from doing so where possible for fear of arrest, prosecution, fine, and imprisonment.

24. Plaintiffs may also be subject to criminal penalties whenever a state of emergency may be declared if at the time of such declaration plaintiffs possess firearms outside their homes.

25. GRNC/FFE and SAF have numerous members and supporters throughout North Carolina, including its coastal areas, Stokes County, and the City of King, who are likewise impacted by declared states of emergency which curtail their abilities to possess firearms and ammunition for any purposes, including self-defense and even hunting.

26. Owing to their missions, the organizational resources of GRNC/FFE and SAF are taxed by inquiries into the impact of declared states of emergency upon citizens' ability to use firearms.

27. Plaintiffs Bateman, Green, and Minges, and members and supporters of GRNC/FFE and SAF, have firearms, which they keep and carry for their defense and the defense of their families. The need for defensive arms is never more acute than "during times of public crisis, disaster, rioting, catastrophe, or similar public emergency, [when] public safety authorities are unable to maintain public order or afford adequate protection for lives or property, or whenever the occurrence of any such condition is imminent." N.C. Gen. Stat. § 14-288.1(10).

28. The individual plaintiffs, and the members and supporters of GRNC/FFE and SAF, will continue to be subjected to recurring states of emergency which, absent injunctive relief, will continue depriving them of the ability to buy, sell, possess, transport and carry firearms and ammunition.

## COUNT ONE
## RIGHT TO KEEP AND BEAR ARMS, U.S. CONST., AMEND. II
## 42 U.S.C. § 1983

29. Paragraphs 1 through 28 are incorporated as though fully set forth herein.

30. The Second Amendment guarantees individuals a fundamental right to carry functional handguns in non-sensitive public places for purposes of self-defense, as well as the right to purchase firearms and ammunition.

31. The States and their units of local government are bound to respect Second Amendment rights by operation of the Fourteenth Amendment.

32. North Carolina Gen. Stat. § 14-288.7, forbidding the carrying of firearms and ammunition during declared states of emergency, is unconstitutional, in that it forbids the exercise of Second Amendment rights, damaging plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to permanent injunctive relief against its enforcement.

33. North Carolina Gen. Stat. §§ 14-288.12(b)(4), 14-288.13(b), 14-288.14(a), and 14-288.15(d), to the extent they enable government officials to prohibit the purchase, sale, and possession of firearms and ammunition, are unconstitutional in that they forbid the exercise of Second Amendment rights, damaging plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to permanent injunctive relief against their enforcement.

[Prayer for Relief Appears on Following Page]

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that judgment be entered in their favor and against defendants as follows:

1. An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing N.C. Gen. Stat. §§ 14-288.7, 14-288.12(b)(4), 14-288.13(b), 14-288.14(a), and 14-288.15(d), forbidding the carrying, possession, sale or purchase of firearms and ammunition during declared states of emergency;

2. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

3. Declaratory relief consistent with the injunction; and

4. Any other further relief as the Court deems just and appropriate.

Respectfully submitted on the 28th day of June, 2010.

| | |
|---|---|
| /s/ Alan Gura | /s/ Kearns Davis |
| Alan Gura | Kearns Davis |
| GURA & POSSESSKY, PLLC | N.C. State Bar No. 22014 |
| 101 N. Columbus Street, Suite 405 | kdavis@brookspierce.com |
| Alexandria, VA  22314 | |
| Telephone:  703-835-9085 | /s/ Andrew Tripp |
| Facsimile:  703-997-7665 | Andrew Tripp |
| | N.C. State Bar No. 34254 |
| *Counsel for Plaintiffs* | atripp@brookspierce.com |
| | |
| | BROOKS, PIERCE, MCLENDON, |
| | HUMPHREY & LEONARD, L.L.P. |
| | 1600 Wachovia Center |
| | 150 Fayetteville Street |
| | Raleigh, NC 27601 |
| | Telephone:  919-839-0300 |
| | Facsimile:  919-839-0304 |
| | |
| | *Local Civil Rule 83.1 Counsel for Plaintiffs* |