IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-00265-H

MICHAEL BATEMAN, VIRGIL GREEN,                )
FORREST MINGES, JR., GRNC/FFE, INC.,          )
and SECOND AMENDMENT FOUNDATION,              )
INC.,                                          )
                                               )
                            *Plaintiff*s,     )       **BRIEF IN SUPPORT OF**
                                               )      **THE STATE DEFENDANTS'**
            v.                                 )      **MOTION TO DISMISS**
                                               )
BEVERLY PERDUE, REUBEN F. YOUNG,              )
STOKES COUNTY, and CITY OF KING,              )
                                               )
                            *Defendants.*     )

## INTRODUCTION

In the present lawsuit, Plaintiffs assert a facial challenge to the constitutionality of several

provisions of the North Carolina General Statutes that establish – or authorize the establishment of

– temporary restrictions on firearms during a declared state of emergency.  In *District of Columbia*

*v. Heller*, __ U.S. __, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), and *McDonald v. Chicago*, __ U.S.

__, 177 L. Ed. 2d 894 (2010), the United States Supreme Court held that the Second Amendment

confers a right to possess firearms for the purpose of self-defense in one's home.  In both of these

cases, however, the Supreme Court emphasized that the Second Amendment does *not* create an

absolute right to carry a gun and that circumstances exist under which restrictions on firearms are

constitutionally permissible.

The bulk of Plaintiffs' claims fail on ripeness grounds.  Moreover, in order to prevail on the

facial challenges they have asserted, Plaintiffs would have to show that there are no conceivable

circumstances under which these statutory provisions could operate constitutionally. This they cannot do. For these reasons, Plaintiffs' claims should be dismissed.

## STATEMENT OF THE CASE AND FACTS

Plaintiffs are three natural persons and two organizations who seek declaratory and injunctive relief regarding the enforcement of several provisions of the North Carolina General Statutes relating to the regulation of firearms. Governor Beverly Perdue; Reuben Young, the Secretary of North Carolina's Department of Crime Control and Public Safety; Stokes County; and the City of King are named as Defendants. Defendants Perdue and Young (collectively "the State Defendants") now file the present memorandum of law in support of their Motion to Dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## ARGUMENT

Plaintiffs' claims in this action can be divided into two categories: First, they assert that N.C. GEN. STAT. § 14-288.7, which concerns the transportation or possession of firearms off of one's own premises during a state of emergency, is unconstitutional on its face.

Second, Plaintiffs also facially challenge portions of four other statutes – N.C. GEN. STAT. §§ 14-288.12(b)(4); 14-288.13(b); 14-288.14(a); and 14-288.15(d) (collectively "the Authorizing Statutes"). These four statutes are related and should be analyzed together. Each authorizes the imposition of restrictions or prohibitions (or the extension of such restrictions and prohibitions) on firearms during a state of emergency by the statutorily enumerated persons or entities. These persons or entities include the governing body of a municipality (§14-288.12), the governing body of a county (§ 14-288.13), the chairman of a county board of commissioners (§14-288.14), and the Governor (§ 14-288.15).

-2-

## I. THRESHOLD LEGAL ISSUES.

Two principles of law should guide this Court's analysis. Each is discussed below.

### A. STANDARD OF REVIEW APPLICABLE TO FACIAL CHALLENGES.

The Supreme Court has emphasized that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists under which the Act would be valid*." *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987) (emphasis added). The Fourth Circuit has likewise noted that a litigant mounting a facial challenge to a statute's constitutionality "has a very heavy burden to carry" and must prove that the law "cannot operate constitutionally under any circumstance." *West Virginia v. United States HHS*, 289 F.3d 281, 292 (4th Cir. 2002). *See also Baude v. Heath*, 538 F.3d 608, 613 (7th Cir. 2008) ("Plaintiffs have waged the suit as a 'facial' challenge to the statute - which means that Indiana receives the benefit of any plausible factual suppositions, for a statute is not unconstitutional 'on its face' if there is any substantial possibility that it will be valid in operation."), *cert. denied*, __ U.S. __, 173 L. Ed. 2d 1293 (2009).

### B. PRESUMPTION OF CONSTITUTIONALITY.

The Supreme Court has recognized that a "presumption of constitutionality" exists as to state statutes. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1046, 120 L. Ed. 2d 798, 832 (1992). *See also Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1033 (4th Cir. 1980) (recognizing presumption of validity of state laws). In addition, the Supreme Court has made clear that "statutes should be construed whenever possible so as to uphold their constitutionality." *Graham v. Richardson*, 403 U.S. 365, 382-83, 29 L. Ed. 2d 534, 548 (1971).

-3-

## II. PLAINTIFFS CANNOT SHOW THAT N.C. GEN. STAT. § 14-288.7 IS FACIALLY UNCONSTITUTIONAL.

### A. STATUTORY LANGUAGE.

North Carolina General Statute § 14-288.7 states in pertinent part as follows:

> (a) Except as otherwise provided in this section, it is unlawful for any person to transport or possess off his own premises any dangerous weapon or substance in any area:
>
> (1) In which a declared state of emergency exists[.][1]

### B. DISMISSAL OF PLAINTIFFS' FACIAL CHALLENGE TO N.C. GEN. STAT. § § 14-288.7 IS CONSISTENT WITH *HELLER* AND *MCDONALD*.

The present lawsuit is a response to the Supreme Court's recent decisions in *District of Columbia v. Heller* and *McDonald v. Chicago*. However, neither of those cases entitles Plaintiffs to the relief they are seeking in this action.

In *Heller*, the Supreme Court held that the District of Columbia's "ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any lawful firearm *in the home* operable for the purpose of immediate self-defense." *Heller*, 128 S. Ct. at 2821-22, 171 L. Ed. 2d at 683 (emphasis added). The Supreme Court subsequently ruled in *McDonald* that the Second Amendment right articulated in *Heller* applies not only to the federal government but also to the States. *McDonald*, 177 L. Ed. 2d at 929.

At the outset, it is important to emphasize that because N.C. GEN. STAT. § 14-288.7 expressly applies only where a person is *outside* of his or her premises, it does not intrude upon the core

---

[1] This statutory provision does not apply to persons who are exempt from the restrictions on carrying concealed weapons pursuant to N.C. GEN. STAT. § 14-269(b). *See* N.C. GEN. STAT. § 14-288.7(b). The terms "declared state of emergency" and "dangerous weapon or substance" are defined in N.C. GEN. STAT § 14-288.1(3) and (2), respectively.

-4-

doctrine articulated in *Heller* – the right to self-defense in one's home. *See McDonald*, 177 L. Ed. 2d at 929 (emphasis added) (summarizing the ruling in *Heller* as "protect[ing] the right to possess a handgun *in the home* for the purpose of self-defense") (emphasis added); *United States v. Riley*, 359 Fed. Appx. 402, 404 (4th Cir. 2010) (unpublished) (characterizing *Heller* as "secur[ing] an individual's right to keep handguns in the home for self-protection"); *United States v. Masciandaro*, 648 F. Supp. 2d 779, 787 (E.D. Va. 2009) (internal quotation marks and citation omitted) ("*Heller's* narrow holding is explicitly limited to vindicating the Second Amendment right of law-abiding, responsible citizens to use arms in defense of hearth and home."). As a federal court has recently noted, "[t]he Supreme Court has never held that the Second Amendment protects the carrying of guns *outside the home*." *Gonzalez v. Vill. of W. Milwaukee*, No. 09CV0384, 2010 U.S. Dist. LEXIS 46281, at *10 (E.D. Wis. May 11, 2010) (unpublished) (emphasis added).

In both *Heller* and *McDonald*, the Supreme Court took great pains to make clear that the Second Amendment right is *not* absolute and that its rulings were not intended to disturb all state laws imposing restrictions on firearms. The Court stated the following on this subject in *Heller*:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 128 S. Ct. at 2816-17, 171 L. Ed. 2d at 678 (internal citations omitted).[2]

---

[2] In addition, the Court acknowledged that the Second Amendment does not protect the carrying of "dangerous and unusual weapons." *Heller*, 128 S. Ct. at 2817, 171 L. Ed. 2d at 678.

The *Heller* Court also noted that the above-quoted examples of permissible restrictions on firearms were meant only to be illustrative and that this list was not intended to be exhaustive. *Id.* at 2817, 171 L. Ed. 2d at 678 n.26. The Supreme Court further stated its recognition of the problems posed by handgun violence in this nation and acknowledged that "[t]he Constitution leaves [States] a variety of tools for combating that problem, including some measures regulating handguns[.]" *Id.* at 2822, 171 L. Ed. 2d at 684.

In *McDonald*, the Supreme Court reiterated its prior recognition in *Heller* that the right protected by the Second Amendment is not absolute. In addition, the Court emphasized that its ruling that the Second Amendment applies to the States through the doctrine of incorporation "does not imperil every [State] law regulating firearms." *McDonald*, 177 L. Ed. 2d at 926.

North Carolina General Statute § 14-288.7 not only has no effect on the ability to possess guns in one's home but also applies only during the dangerous and extraordinary circumstances that exist when a state of emergency has been declared. As such, it fits squarely within the universe of state laws regulating firearms left undisturbed by *Heller* and *McDonald*.

As shown above, the burden is not on the State to prove that this statute operates constitutionally in all circumstances. To the contrary, in order to prevail on their facial challenge, Plaintiffs must show that there are not *any* scenarios in which § 14-288.7 can operate constitutionally. Plaintiffs are unable to do so.

As discussed earlier in this brief, the Supreme Court in *Heller* listed state law prohibitions on guns in "sensitive places" (such as schools and government buildings) as non-exclusive examples of permissible restrictions on firearms – restrictions that are constitutional even under normal circumstances. A far greater number of areas qualify as "sensitive" during emergency circumstances.

-6-

States of emergency place enormous burdens on local governments and their employees. The demands on law enforcement increase substantially in the face of disruptions in transportation, communications and electrical power. During the tense and rapidly evolving circumstances attendant to emergency situations, the threat of armed mayhem and social unrest is greatly enhanced. Laws such as N.C. GEN. STAT. § 14-288.7 serve to minimize the likelihood of such occurrences. As the Fourth Circuit has recognized, "[t]he Constitution protects against anarchy as well as tyranny." *United States v. Chalk*, 441 F.2d 1277, 1281 (4th Cir.), *cert. denied*, 404 U.S. 943, 30 L. Ed. 2d 258 (1971).

Under such conditions, the need for public safety demands that law enforcement officers, firefighters, and medical personnel have the unimpeded ability to save the injured, feed and house the homeless, protect property, and attempt to restore order as quickly as possible without the presence of armed persons either intentionally or unintentionally interfering with their efforts to do so. In emergency situations – when communications are slow and visibility is poor but action must be swift – law enforcement officers and other government employees should not be forced to make unnecessary life or death decisions stemming from encounters with individuals carrying weapons while the officers are attempting to respond to emergencies, restore order, clear power lines, build back dams and bridges, and reinforce roadways.

As such, N.C. GEN. STAT § 14-288.7 serves as a commonsense example of a law that permissibly limits the exercise of a right that the Supreme Court has emphasized is not absolutely protected from governmental regulation. The Supreme Court made clear in *Heller* that "we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation . . ." *Heller*, 128 S. Ct. at 2799, 171 L. Ed. 2d at 659 (emphasis in original). As the

Seventh Circuit recently stated in rejecting a Second Amendment challenge, "no one doubts that the goal of . . . preventing armed mayhem[] is an important governmental objective." *See United States v. Skoien*, No. 08-3770, 2010 U.S. App. LEXIS 14262, at * 11 (7th Cir. July 13, 2010) (*en banc*). A desire to minimize the likelihood of such mayhem was a primary impetus for the enactment of N.C. GEN. STAT § 14-288.7.

Both the Fourth Circuit and this Court have upheld restrictions on firearms in the aftermath of *Heller*. The defendant in *Kodak v. Holder*, 342 Fed. Appx. 907 (4th Cir. 2009) (unpublished) challenged a law banning armor-piercing ammunition on Second Amendment grounds, contending that such ammunition minimized the risk of death when utilized for purposes of self-defense. *Id*. at 908. Applying *Heller*, the Fourth Circuit dismissed this argument, ruling that the guarantee under the Second Amendment was not unlimited and that the law was an example of a permissible regulation on the right to bear arms. *Id*. at 908-09. *See also United States v. Cooper*, 351 Fed. Appx. 814 (4th Cir. 2009) (unpublished) (rejecting claim that Second Amendment required invalidation of directive in Sentencing Guidelines for enhanced punishment if weapon is present during commission of crime); *United States v. Brunson*, 292 Fed. Appx. 259 (4th Cir. 2008) (unpublished) (upholding statute prohibiting possession of firearms by felons).

Similarly, in *Mullenix v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 5:07-CV-154, 2008 U.S. Dist. LEXIS 51059 (E.D.N.C. July 2, 2008) (unpublished), the claim before this Court was a facial challenge to a statute placing limits on the types of guns that could be imported into the United States. This Court easily disposed of the plaintiffs' facial attack, ruling that the rights guaranteed under the Second Amendment were not absolute and that the statute at issue fit within the class of lawful regulations contemplated by *Heller*. *Id*. at * 5-6.

-8-

Since *Heller* was decided, numerous courts in other jurisdictions have likewise upheld laws restricting the possession of firearms in a myriad of different contexts. *See*, *e.g.*, *United States v. Rene E.*, 583 F.3d 8 (1st Cir. 2009) (possession of handguns by juveniles), *cert. denied*, __ U.S. __, 175 L. Ed. 2d 921 (2010); *United States v. Dorosan*, 350 Fed. Appx. 874 (5th Cir. 2009) (unpublished) (bringing gun onto United States Postal Service property), *cert. denied*, __ U.S. __, 176 L. Ed. 2d 198 (2010); *United States v. Richard*, 350 Fed. Appx. 252 (10th Cir. 2009) (unpublished) (possession of firearm in or affecting commerce by one who is an unlawful user of, or who is addicted to, a controlled substance); *United States v. Davis*, 304 Fed. Appx. 473 (9th Cir. 2008) (carrying concealed weapon on airplane); *Masciandaro*, 648 F. Supp. 2d at 786 (carrying loaded firearm in vehicle while on National Park land); *Heller v. District of Columbia*, 698 F. Supp. 2d 179 (D.D.C. 2010) (firearms registration procedures, prohibition of assault weapons, and ban on large capacity ammunition feeding devices); *United States v. Walters*, No. 2008-31, 2008 U.S. Dist. LEXIS 53455 (D.V.I. July 15, 2008) (unpublished) (possession of firearm within 1,000 feet of school zone); *People v. Flores*, 86 Cal. Rptr. 3d 804 (carrying loaded firearm in public place), *disc. rev. denied*, 2009 Cal. LEXIS 2979 (Cal. App. 2008).

Notably, the invalidity of Plaintiffs' challenge to § 14-288.7 is evident on the face of their own Complaint. In the Complaint, Plaintiffs characterize the Second Amendment as protecting the right to carry handguns "in *non-sensitive* public places . . ." (Compl. ¶ 30) (emphasis added). This statement implicitly concedes that there is no Second Amendment right to possess a gun in a *sensitive* public place. As demonstrated above, Plaintiffs simply cannot show that there are no "sensitive" public places during a state of emergency where the carrying of guns can legitimately be prohibited – which further reveals their inability to meet the burden of sustaining a facial challenge

-9-

to § 14-288.7. *See Little v. United States*, 989 A.2d 1096, 1100 (D.C. 2010) (recognizing that facial challenge to laws barring the carrying of a pistol without a license, possessing an unregistered firearm, and unlawfully possessing ammunition could not be sustained because circumstances existed in which these statutes could operate constitutionally).

### C. COURTS HAVE RECOGNIZED THE NEED FOR TEMPORARY RESTRICTIONS ON CONSTITUTIONAL RIGHTS DURING EMERGENCY SITUATIONS.

Finally, it is worth noting that courts have recognized the extraordinary circumstances existing during times of emergency and the corresponding need for governments to employ special measures to protect citizens from harm – even measures that involve temporary restrictions on constitutional rights. The Supreme Court has stated, for example, that the constitutional right to travel does not mean that travel to "areas ravaged by flood, fire or pestilence" cannot be interfered with in order to protect the safety and welfare of the citizenry. *Zemel v. Rusk*, 381 U.S. 1, 15-16, 14 L. Ed. 2d 179, 189 (1965).

The Fourth Circuit addressed an issue relevant to the one presented here in *United States v. Chalk*, 441 F.2d 1277 (4th Cir.), *cert. denied*, 404 U.S. 943, 30 L. Ed. 2d 258 (1971) In *Chalk*, the mayor of Asheville declared a state of emergency following a civil disturbance. Pursuant to N.C. GEN. STAT § 14-288.12 (one of the Authorizing Statutes whose provisions are being challenged in the present action), the mayor issued a proclamation that – among other things – banned the possession of dangerous weapons and ammunition off of one's premises and imposed a curfew. The defendant was stopped by law enforcement officers for violating the curfew at which time several guns were seized by officers from his vehicle. On appeal, one of the defendant's contentions was

-10-

that the search of his car had been unlawful because the mayor's actions were the result of an unconstitutional statutory scheme. *Id.* at 1278-80.

The Fourth Circuit held that his challenge to the statutory scheme lacked merit, ruling that "[c]ontrol of civil disorders that may threaten the very existence of the State is certainly within the police power of government." *Id.* at 1280. The court held that "[t]he invocation of emergency powers necessarily restricts activities that would normally be constitutionally protected. Actions which citizens are normally free to engage in become subject to criminal penalty." *Id.* at 1280.

Other courts have likewise acknowledged that "proper deference" and "wide latitude" must be granted to governmental officials when dealing with emergencies. *See Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996) ("In an emergency situation, fundamental rights . . . may be temporarily limited or suspended."). *See also Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005) (rejecting constitutional challenge to emergency order prohibiting access to portions of city); *Moorhead v. Farrelly*, 727 F. Supp. 193, 200-201 (D.V.I. 1989) (articulating need for deference to actions of executive branch during emergency situation resulting from hurricane; recognizing legitimate concern for public safety due to factors including loss of electricity and telephone service).

*In re Juan C.*, 28 Cal. App. 4th 1093 (Cal. App. 1994), *disc. review denied*, 1995 Cal. LEXIS 135 (Jan. 5, 1995), is also instructive on this issue. In that case, the court held that threats to the safety and welfare of the community posed by looting, rioting, and burning provided compelling grounds for the imposition of a curfew. In its analysis, the court listed a number of substantial governmental interests furthered by the establishment of a curfew during a civil disturbance that justified the ensuing temporary restriction on constitutional rights. Several of these enumerated governmental interests articulated by the court are equally applicable (if not even more so) in

-11-

connection with the regulation of firearms during a state of emergency – such as protecting citizens

from injury, minimizing the likelihood of vigilante action, and reducing the number of incidents that

require the utilization of scarce police resources.  *Id.* at 1100.

## III.  PLAINTIFFS' FACIAL CHALLENGE TO THE AUTHORIZING STATUTES SHOULD ALSO BE DISMISSED.

### A.  STATUTORY LANGUAGE.

The Authorizing Statutes state in pertinent part as follows:

#### N.C. GEN. STAT. § 14-288.12

(a) The governing body of any municipality may enact ordinances designed to permit the imposition of prohibitions and restrictions during a state of emergency.

(b) The ordinances authorized by this section may permit prohibitions and restrictions:

* * *

(4) Upon the possession, transportation, sale, purchase, storage, and use of dangerous weapons and substances . . .

#### N.C. GEN. STAT.§ 14-288.13

(a)  The governing body of any county may enact ordinances designed to permit the imposition of prohibitions and restrictions during a state of emergency.

(b) The ordinances authorized by this section may permit the same prohibitions and restrictions to be imposed as enumerated in G.S. 14-288.12(b).

#### N.C. GEN. STAT.§ 14-288.14

(a) The chairman of the board of commissioners of any county who has been requested to do so by a mayor may by proclamation extend the effect of any one or more of the prohibitions and restrictions imposed in that mayor's municipality pursuant to the authority granted in G.S. 14-288.12.  The chairman may extend such prohibitions and restrictions to any area within his

county in which he determines it to be necessary to assist in controlling the state of emergency within the municipality.

**N.C. GEN. STAT. § 14-288.15**

(a) When the Governor determines that a state of emergency exists in any part of North Carolina, he may exercise the powers conferred by this section if he further finds that local control of the emergency is insufficient to assure adequate protection for lives and property.

\* \* \*

(d) The Governor in his discretion, as appropriate to deal with the emergency then occurring or likely to occur, may impose any one or more or all of the types of prohibitions and restrictions enumerated in G.S. 14-288.12(b), and may amend or rescind any prohibitions and restrictions imposed by local authorities.[3]

**B.      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CHALLENGE TO THE AUTHORIZING STATUTES BASED ON PLAINTIFFS' FAILURE TO SHOW AN EXISTING CASE OR CONTROVERSY.**

It is well established that in order for a court to adjudicate a dispute, the matter must be ripe. Issues are not ripe for adjudication when the case has been filed so early that it is not yet clear whether a genuine dispute actually exists between the parties. 15 James Wm. Moore et al., *Moore's Federal Practice* § 101.70 [2] ( 3d ed. 2006). The question of ripeness goes to the issue of whether the court possesses subject matter jurisdiction over the action. *Id*. at § 101.70 [1].

Ripeness is assessed by balancing the fitness of the issues for judicial resolution with the hardship accruing to the parties through the withholding of such resolution. *Ostergren v. Cuccinelli*, No. 09-1723, 2010 U.S. App. LEXIS 15254, at \*\* 67-68 (4th Cir. July 26, 2010). "Because the

---

[3] The Authorizing Statutes also provide authority for the establishment of various other types of prohibitions and restrictions (unrelated to firearms) reasonably deemed necessary to maintain order and protect lives and property during a state of emergency. *See* N.C. GEN. STAT. § 14-288.12(b).

doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form, problems such as the inadequacy of the record . . . or ambiguity in the record . . . will make a case unfit for adjudication on the merits." *Id*. at * 68 (citations and internal quotation marks omitted).

As the Fourth Circuit has explained, "Article III [of the Constitution] . . . schools federal judges in patience; we must await specific disputes arising from the actions of those primarily responsible for social policy. Otherwise, we discard our robes for legislative hats without the electoral accountability that legitimizes the legislative product or executive enforcement." *Doe v. Duling*, 782 F.2d 1202, 1207 (4th Cir. 1986).

The Supreme Court has made clear that a plaintiff cannot show a sufficient case or controversy where the circumstances alleged to be unconstitutional are "hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 906 (1979). *See Texas v. United States*, 523 U.S. 296, 300, 140 L. Ed. 2d 406, 410-11 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). The Supreme Court has held that "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 81 L. Ed. 2d 617, 621 (1937) (citations omitted).

The Supreme Court further noted in *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 97 L. Ed. 2d 921 (1952), that federal courts "must be alert to avoid imposition upon their jurisdiction

-14-

through obtaining . . . premature interventions, especially in the field of public law. . . . The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Id*. at 243-44, 97 L. Ed. 2d at 296.

In the present case, Plaintiffs' challenge to the Authorizing Statutes cannot be characterized as anything but nebulous and contingent. The Authorizing Statutes themselves do not contain any actual restrictions on firearms and instead merely *authorize* the establishment of regulations during a state of emergency. Nor do the Authorizing Statutes purport to dictate the content of such regulations. Thus, there is currently no tangible prohibition or restriction before this Court.

Moreover, it is important to note that the Authorizing Statutes are permissive rather than mandatory. They merely provide that the statutorily designated persons or entities *may* enact prohibitions or regulations involving firearms. There is no language *requiring* them to do so.

In short, Plaintiffs are asking this Court to hypothesize that unnamed public actors will adopt regulations at some unspecified date in the future that will contain terms exceeding constitutional limits. It is difficult to imagine a legal claim more fraught with uncertainty. The ripeness doctrine serves to avoid such premature judicial intervention.

While arising in a different factual context, *Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001), is an example of a claim for injunctive relief being dismissed on ripeness grounds due to a plaintiff's failure to put before the court a tangible restriction on its constitutional rights. In *Pittman*, the plaintiffs sought to enjoin on First Amendment grounds the enforcement of an advisory opinion promulgated by a state bar relating to whether judicial candidates could respond to a questionnaire

-15-

created by a religious organization. The Eleventh Circuit determined that the claim was not ripe, stating the following:

> [A]lthough it may appear that the plaintiffs' claims involve a pure question of law (whether the Bar's advisory opinion comports with the First Amendment), an important factual issue must initially be resolved – what the actual policy of the Bar is concerning the questionnaire. The informal opinion . . . does not establish the Bar's policy. . . . [D]espite the "legal" appearance of the questions involved in the plaintiffs' claims, the unresolved, fundamental factual issue of what the Bar's official position is in regard to the questionnaire counsels strongly against finding ripeness.

*Id*. at 1278-79.

Plaintiffs' facial challenge to the Authorizing Statutes fails for the same reasons noted by the court in *Pittman*. A similar "unresolved, fundamental factual issue" exists here because these statutes do not themselves contain any actual prohibitions or restrictions on the right to possess a firearm. Instead, they merely *authorize* the promulgation of prohibitions or restrictions – without dictating the terms that can be contained therein. Obviously, this Court cannot meaningfully assess the constitutional validity of a prohibition or regulation involving firearms during a state of emergency without knowing the precise language and scope of the regulation at issue. *See Digital Props. v. City of Plantation*, 121 F.3d 586, 590-91 (11th Cir. 1997) (because plaintiffs' constitutional challenge was simply based on its anticipated belief that the city would interpret its ordinances in a way that would violate its rights, plaintiff's claim merely constituted a *potential* dispute and was, therefore, unripe).

The ripeness doctrine was applied in a factual context analogous to that existing here in *America Waste & Pollution Control Co. v. St. Martin Parish Police Jury*, 627 So. 2d 158 (La. 1993). In that case, a state law authorized a local parish to provide for zoning and siting regarding the

-16-

disposal of solid waste within the parish. A declaratory judgment claim was brought challenging the constitutionality of the statute. The court dismissed the claim on ripeness grounds.

> A justiciable controversy is . . . absent because the statute is being challenged in the abstract. [The statute] is permissive only in its authorization of St. Martin to provide zoning for the parish. Action by St. Martin is necessary to render [the] statute operative. Contesting the statute's constitutionality is premature because a permissive statute must be rendered operative or threatened to be rendered operative prior to being challenged. [The] petition is not based on existing facts. It presents only an abstract question as to which there is no present actual dispute ripe for decision, and seeks an advisory opinion.

*Id.* at 162-63 (internal citations omitted).

The same is true here. The Authorizing Statutes do not become operative unless and until a prohibition or restriction on firearms authorized thereunder is actually promulgated. No such specific prohibition or restriction is currently in effect (or, for that matter, even threatened). Plaintiffs' present challenge is clearly premature and, therefore, nonjusticiable.[4]

The court in *Boyle v. McClung*, No. 3-92-0602, 1992 U.S. Dist. LEXIS 21558 (D. Minn. Dec. 11, 1992) (unpublished) applied the ripeness doctrine under similar circumstances. In *Boyle*, the plaintiffs challenged the potential "passthrough" effect of taxes imposed under a state health care law. In dismissing the plaintiffs' claim, the court stated the following:

---

[4] While Plaintiffs' Complaint references a proclamation issued by the City of King last winter during a state of emergency, they do not allege that the proclamation is still in effect and their prayer for relief does not ask this Court to invalidate that proclamation. Nor could they have requested such relief as the State Defendants have been informed that the proclamation has long since been rescinded. Rather, they appear to mention the proclamation only as a past example of a local government adopting a prohibition or regulation on firearms during emergency circumstances. Plaintiffs cannot establish a present justiciable case or controversy regarding the facial validity of the Authorizing Statutes simply by showing that – on a single past occasion – one particular local government adopted a regulation that Plaintiffs believe was unlawful.

-17-

> [T]he passthrough is only permissive in nature and not required by the legislation. . . . This court can not grant relief on such hypothetical questions. . . . [E]ven if such passthrough occurred it is not clear how it might occur and what impact it would have. At some later time, assuming the tax does "pass through", it will be clearer what amount, if any, is actually passed through.

*Id*. at ** 3-4 (citation omitted). *See also Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 324 (3d Cir. 1998) ("There is . . . a great deal of uncertainty regarding *how* the statute will operate against plaintiffs' members. It is this uncertainty that renders the claim unfit for judicial review.") (emphasis in original).

Nor can Plaintiffs escape application of the ripeness doctrine based on a showing of hardship. It would be nonsensical for Plaintiffs to assert that they will suffer undue hardship if this Court declines to speculate as to the constitutionality of future hypothetical prohibitions or regulations promulgated by unknown persons or entities whose terms are incapable of being presently ascertained.

Dismissal of this claim on ripeness grounds would also be consistent with principles of federalism. The Supreme Court has defined the concept of federalism as "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44, 27 L. Ed. 2d 669, 676 (1971).

The Fourth Circuit has noted the link between the ripeness doctrine and federalism:

> Federal courts are principally deciders of disputes, not oracular authorities. We address particular 'cases' or 'controversies,' U.S. Const. Art. III, § 2, and may not arbitrate abstract differences of opinion. The case or controversy requirement maintains proper separation of powers between courts and

-18-

legislatures, provides courts with arguments sharpened by the adversarial process, and narrows the scope of judicial scrutiny to specific facts. Where state criminal statutes are challenged, the requirement protects federalism by allowing the states to control the application of their own criminal laws.

*Duling*, 782 F.2d at 1205 (citation omitted). *See also Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. at 247, 97 L. Ed. 2d at 298 ("Declaratory proceedings in the federal courts against state officials must be decided with regard for the implications of our federal system.").

Considerations of federalism preclude a federal court from striking down a duly enacted law of a sovereign State based simply on conjecture that the statute *may* – at some unknown date in the future – be used by a governmental official as authorization to enact an unconstitutional regulation. *See Citizens Action Coalition, Inc. v. Westfall*, 582 F. Supp. 11, 13, 16 (S.D. Ind. 1983) ("The . . . concepts of justiciability, abstention, and 'Our Federalism' compel this Court to stay its hand in a case too premature to resolve. . . . In short, this case simply is not 'ripe' in the sense that no deprivation of a constitutional right alleged to exist in this complaint has yet occurred.").[5]

For all of these reasons, Plaintiffs' facial challenge to the Authorizing Statutes is not ripe. Consideration of such a challenge at the present time would require this Court to analyze purely hypothetical prohibitions and regulations. As such, this Court would be rendering an advisory opinion – a form of relief that federal courts are not permitted to give. *See Burke v. City of Charleston*, 139 F.3d 401, 407 (4th Cir. 1998); *11126 Baltimore Blvd. v. Prince George's County*, 924 F.2d 557, 558 (4th Cir.), *cert. denied*, 502 U.S. 819, 116 L. Ed. 2d 50 (1991).

---

[5] The premature resolution of Plaintiffs' challenge to the Authorizing Statutes would also run afoul of the Supreme Court's longstanding admonition for courts to avoid the unnecessary adjudication of constitutional issues. *See Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461, 89 L. Ed. 2d 1725, 1734 (1945) ("It has long been [the Court's] considered practice not . . . to decide any constitutional question in advance of the necessity for its decision. . . .").

**C.** **Even if Plaintiffs' Challenge to the Authorizing Statutes Was Somehow Deemed Ripe, Dismissal Would Still be Appropriate Because These Statutes Are Not Facially Unconstitutional.**

For the same reasons discussed earlier in this brief as to how N.C. Gen. Stat § 14-288.7 can operate constitutionally so as to bar Plaintiffs' facial challenge, so too can the Authorizing Statutes be applied constitutionally. Plaintiffs simply cannot show that every prohibition or regulation promulgated under the Authorizing Statutes during a state of emergency would violate the Second Amendment.

Indeed, such an argument is logically flawed based on *Heller*. Given that *Heller* makes clear that *some* restrictions on the right to possess firearms under the Second Amendment are constitutionally permissible, it follows *a fortiori* that restrictions on the right to possess or transport guns as contemplated by the Authorizing Statutes are capable of being drafted in a way that would pass constitutional muster – which dooms Plaintiffs' attempt to have these statutes declared facially invalid. *See Salerno*, 481 U.S. at 745.

Finally, it is important to note that Plaintiffs' facial attack on the Authorizing Statutes could not succeed unless this Court was required to assume that every prohibition or regulation promulgated under the authority of these statutes would exceed constitutional boundaries. However, the law assumes precisely the opposite – that a legislative body intends to act *within* constitutional limits. *See, e.g., Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 177 (4th Cir. 2010) (doctrine of constitutional avoidance is based on reasonable notion that legislatures do not intend interpretation of law raising constitutional doubts); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1231 (10th Cir. 1999) ("[W]e assume that Congress legislates with constitutional limitations in mind . . ."), *cert. denied*, 530 U.S. 1213, 147 L. Ed. 2d 248 (2000). Therefore, the appropriate presumption to be used is that

any future restrictions enacted pursuant to the Authorizing Statutes will comply with all applicable constitutional limitations.

## **CONCLUSION**

The Supreme Court has made clear that the right to possession of firearms under the Second Amendment is not absolute. Plaintiffs are simply unable to show that there are no circumstances in which a State is permitted to restrict this right during a state of emergency. Moreover, Plaintiffs' challenge to the Authorizing Statutes fails on ripeness grounds. Accordingly, the State Defendants respectfully submit that their Motion to Dismiss should be granted.

Respectfully submitted, this the 13th day of August, 2010.

ROY COOPER
Attorney General

/s/ Mark A. Davis
Mark A. Davis
Special Deputy Attorney General
State Bar No. 18142
Attorney for The State Defendants

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
E-mail: mdavis@ncdoj.gov
Telephone: (919) 716-6900
Facsimile: (919) 716-6763

-21-

## CERTIFICATE OF SERVICE

I hereby certify that on this day, August 13, 2010, I electronically filed the foregoing **BRIEF IN SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314

Andrew T. Tripp
Kearns Davis
Brooks, Pierce, McLendon
  Humphrey & Leonard, L.L.P.
P.O. Box 1800
Raleigh, NC 27602

Walter W. Pitt, Jr.
Kevin G. Williams
Bell, Davis & Pitt
P.O. Box 21029
Winston-Salem, NC 27120

Henry W. Jones, Jr., Lori P. Jones
Jordan Price Wall Gray Jones &
  Carlton, PLLC
P.O. Box 10669
Raleigh, NC 27605


/s/ Mark A. Davis
Special Deputy Attorney General