IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-00265-H

| | |
|---|---|
| MICHAEL BATEMAN, VIRGIL GREEN, FORREST MINGES, JR., GRNC/FFE, INC., and SECOND AMENDMENT FOUNDATION, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> BEVERLY PERDUE, REUBEN F. YOUNG, STOKES COUNTY, and CITY OF KING, <br><br> *Defendants*. | **AFFIDAVIT OF JOHN H. WILLIAMS, JR.** |

I, John H. Williams, Jr., being duly sworn, do depose as follows:

1. I am over 18 years of age, am competent to testify, and have personal knowledge of the matters referred to herein.

2. I have been a Captain with the Charlotte-Mecklenburg Police Department since 2006.

3. I have worked in law enforcement for twenty-four years including two years with the Winston-Salem Police Department and twenty-two years with the Charlotte-Mecklenburg Police Department.

4. My current duties involve being a Watch Commander for the night-shift where I am responsible for all departmental operations including responding to major crime scenes, coordinating and managing crime scenes, and ensuring that appropriate personnel report to crime scenes.

5. I have experience as Division Commander and in the Duty Captain's Office of the Charlotte-Mecklenburg Police Department.

6. My educational accomplishments include a four-year degree in Criminal Justice, being a state certified instructor, being a firearms instructor, being a general instructor for the Basic Law Enforcement training course, and serving as an instructor for in-service training requirements.

7. Approximately September 1989, a formal state of emergency was declared for the City of Charlotte and Mecklenburg County in the aftermath of Hurricane Hugo. As a then-young patrol officer for the Charlotte-Mecklenburg Police Department, I implemented emergency management protocols in designated areas of the city and county.

8. Since the eye of the storm passed over the City of Charlotte, Hurricane Hugo had caused major damage to infrastructure and communications. Landlines, cellphones and radios were down because towers were destroyed. Homes and businesses were heavily damaged or destroyed. Roadways were blocked and/or impassable.

9. Multiple federal, state, and local agencies assisted in the aftermath of Hurricane Hugo. The Federal Emergency Management Agency (FEMA) pulled numerous resources from a lot of places during that time. State agencies, like the N.C. Department of Transportation, also assisted in cleaning and restoring the infrastructure. The North Carolina National Guard provided troops to assist with crowd control and heavy vehicles like Humvees to assist with passing through certain areas and getting around on damaged roadways.

10. A police department's first priority, in this type of disaster, is to identify injured people and provide treatment to them by evacuating or transporting them to medical facilities. In the aftermath of Hurricane Hugo, numerous people were injured and required treatment.

11. A police department's second priority is to mitigate the effects of the disaster. Obviously, in the aftermath of Hurricane Hugo there was a lot of damage to homes and businesses.

Damaged homes resulted in many people being displaced. The City of Charlotte sought to mitigate security-related issues by implementing a curfew so that people would not be on the street after a certain time and coordinating protection for those areas that were damaged the most.

12. I worked alongside a member of the North Carolina National Guard to patrol and secure neighborhood and business locations that were damaged for the purpose of preventing looting, enforcing the curfew, and helping place people into one of the established shelters that had been set up.

13. In performing security sweeps of businesses, I sometimes encountered armed individuals at the business locations. It was often difficult to tell whether the person was the lawful owner of the business or was an actual or potential criminal. Approaching these individuals created potentially dangerous situations from a safety perspective. The presence of these armed persons made our jobs harder and even more dangerous.

14. North Carolina's laws restricting the carrying of firearms off of a person's premises during a state of emergency is very helpful to law enforcement officers. For example, in the aftermath of Hurricane Hugo, the following occurred: groups of people in the streets, chaos, emotions on display, damaged infrastructure, inadequate communication systems, and inappropriate behavior. In such circumstances, many of the people carrying guns on the street have not had adequate training in firearms. As a result, there is a much greater potential for confrontations involving the use of deadly force. Such situations can not only lead to tragic results but also require the time and attention of law enforcement agencies when that time could be better spent providing emergency response measures.

15. From a law enforcement officer's perspective, significant problems are created in the aftermath of a disaster when someone has carried a firearm off his residential property and the other people who come into contact with the armed person do not know what that person's intentions are. One of the biggest fears of law enforcement officers is that we will encounter someone with a firearm during a state of emergency where emotions are running high and many things are happening at once and that person will react with gun-related violence. Such violence can kill or seriously injure both innocent citizens and law enforcement officers.

16. I recall one specific incident that occurred in the aftermath of Hurricane Hugo when I entered a business where an individual was inside and armed. It was one o'clock in the morning, and my partner in the North Carolina National Guard and I were doing a sweep of the area at one of the shopping centers as part of our security sweep. The armed person did not have any kind of flashlight or any way to illuminate the area. We shined a flashlight on him and saw that he possessed a shotgun. Immediately, there was a tense encounter because he did not know who we were and vice-versa. The individual then identified himself as the business owner. While fortunately no violence occurred during this incident, violence could easily have resulted.

17. Subsequently, we started compiling a list of area businesses along with information about each business owner. This list, compiled from the security sweeps we conducted, would be passed onto the next team once my shift ended. However, even with the list, we still had to conduct checks on every person we encountered possessing a firearm. It took extra time to identify the person and to check to see if the person could carry the firearm lawfully – time that would have been saved if we could have simply swept the business locations, secured them, and moved on, which would have been more effective and time-efficient. It took even more time to perform this standard

procedure because we were working on limited channels due to the vast damage to our communications systems. There was a lot of radio traffic all across the city that was funneled into command level structure, so it took longer than usual to get a response back. If the check came back that the armed person we had encountered was not authorized to be carrying the firearm, we would arrest the individual, seize the firearm, transport the person to jail, and turn the firearm over to Property Control.

This the 14th day of December, 2010.

John H. Williams, Jr.

Sworn to and subscribed before me, this the 14 day of December, 2010.

Notary Public

My commission expires: May 18, 2011

Respectfully submitted, this the 15th day of December 2010.

>ROY COOPER
>Attorney General
>
>/s/Mark A. Davis
>Mark A. Davis
>Special Deputy Attorney General
>Attorney for The State Defendants
>N.C. Department of Justice
>Post Office Box 629
>Raleigh, NC 27602
>E-mail: mdavis@ncdoj.gov
>Telephone: (919) 716-6900
>Facsimile: (919) 716-6763
>State Bar No. 18142

## CERTIFICATE OF SERVICE

I hereby certify that on this day, December 15, 2010, I electronically filed the foregoing **AFFIDAVIT OF JOHN H. WILLIAMS, JR.** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314

Andrew T. Tripp
Kearns Davis
Brooks, Pierce, McLendon
 Humphrey & Leonard, L.L.P.
P.O. Box 1800
Raleigh, NC 27602

Walter W. Pitt, Jr.
Kevin G. Williams
Bell, Davis & Pitt
P.O. Box 21029
Winston-Salem, NC 27120

Henry W. Jones, Jr.
Lori P. Jones
Jordan Price Wall Gray Jones &
 Carlton, PLLC
1951 Clark Avenue
P.O. Box 10669
Raleigh, NC 27605

/s/Mark A. Davis
Special Deputy Attorney General