IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BATEMAN, et al., | ) | Case No. 5:10-CV-265-H |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OF POINTS AND** |
| | ) | **AUTHORITIES IN OPPOSITION TO** |
| v. | ) | **DEFENDANTS' MOTIONS FOR** |
| | ) | **SUMMARY JUDGMENT** |
| BEVERLY PERDUE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**COME NOW** the Plaintiffs, Michael Bateman, Virgil Green, Forrest Minges, Jr., GRNC/FFE, Inc., and Second Amendment Foundation, Inc., by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Opposition to Defendants' Motions for Summary Judgment.

Dated: January 10, 2011                Respectfully submitted,

/s/ Alan Gura                          /s/ Andrew T. Tripp
Alan Gura                              Kearns Davis
Gura & Possessky, PLLC                 N.C. State Bar No. 22014
101 N. Columbus Street, Suite 405      kdavis@brookspierce.com
Alexandria, VA 22314                   Andrew T. Tripp
703.835.9085/Fax 703.997.7665          N.C. State Bar No. 34254
                                       atripp@brookspierce.com
                                       BROOKS, PIERCE, MCLENDON,
*Counsel for Plaintiffs*                    HUMPHREY & LEONARD, L.L.P.
                                       1600 Wachovia Center
                                       150 Fayetteville Street
                                       Raleigh, NC 27601
                                       Telephone: 919-839-0300
                                       Facsimile: 919-839-0304

                                       *Local Civil Rule 83.1 Counsel for Plaintiffs*

TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     CONSTITUTIONAL RIGHTS CANNOT BE ABSOLUTELY PROHIBITED.. . . . . . . . 2

II.    THE SECOND AMENDMENT IS NOT LIMITED TO THE HOME. . . . . . . . . . . . . . . 3

III.   THE FOURTH CIRCUIT HAS HELD THAT THE SECOND
       AMENDMENT RIGHTS OF LAW-ABIDING, RESPONSIBLE
       INDIVIDUALS ARE SUBJECT TO STRICT SCRUTINY REVIEW.. . . . . . . . . . . . . . . 6

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TABLE OF AUTHORITIES

Cases

*Ashcroft* v. *ACLU*,
    542 U.S. 656 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bd. of Trs. of State Univ. of N.Y.* v. *Fox*,
    492 U.S. 469 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Commonwealth v. Blanding*,
    20 Mass. 304 (1825) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*District of Columbia* v. *Heller*,
    128 S. Ct. 2783 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 7

*Marbury* v. *Madison*,
    5 U.S. (1 Cranch) 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Parker* v. *District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Respublica v. Oswald*,
    1 U.S. (1 Dall.) 319 (Pa. 1788) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States* v. *Chester*,
    2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010) . . . . . . . . . . . . . . . 1, 3, 6-8

*United States* v. *Miller*,
    307 U.S. 174 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States* v. *Playboy Entm't Group*,
    529 U.S. 803 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *Salerno*,
    481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statutes

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D.C. Code § 22-4504(a) (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

D.C. Code § 22-4506 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Other Authorities

David Kopel & Clayton Cramer, *State Court Standards
  of Review for the Right to Keep and Bear Arms*,
  50 SANTA CLARA L. REV. 1 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

Defendants Beverly Perdue and Reuben Young's ("State Defendants") motion for summary judgment adds nothing new. The brief in support of that motion merely continues Defendants' arguments with Plaintiffs' position, incorporating by reference the Defendants' earlier briefs (State Def. Br. at 2) and serving as little more than an additional reply on their motion to dismiss. For example, Defendants claim, without elaboration, that Plaintiffs "fail[] to satisfy basic principles of ripeness," *Id.* at 7, but Plaintiffs have already briefed this issue extensively. *See* Opp. to Motion to Dismiss, at 19-23. There is no need to repeat the material.

The other Defendants' summary judgment motions are no better, relying on nothing more than incorporation by reference of the State Defendants' briefing, and their own earlier briefing on the motions to dismiss.[1] Given the brevity of new material, the opposition need not be extensive.

But that is not to say that these motions are of no value. They present the Court an opportunity to consider the Fourth Circuit's recent published opinion in *United States* v. *Chester*, __ F.3d __, 2010 U.S. App. LEXIS 26508 (4th Cir. Dec. 30, 2010), attached hereto as Exhibit A. *Chester* is the law of this circuit, and it completely dispenses with Defendants' arguments and those of their amici, also addressed below.

---

[1]Defendant County adds that it had nothing to do with the enactment of the challenged laws, a fact which is entirely irrelevant in this action brought pursuant to 42 U.S.C. § 1983. The issue is not who enacted the statute, but rather, which person, under color of state law, is violating the Plaintiffs' rights.

ARGUMENT

I.  CONSTITUTIONAL RIGHTS CANNOT BE ABSOLUTELY PROHIBITED.

Contrary to Defendants' assertions, nowhere do Plaintiffs claim that they have an absolute right to carry guns, in the sense that the right to carry is not subject to regulation. Of course the right to carry a gun is subject to some regulation, and Plaintiffs' briefs spell this out in some detail. But absolutism does have a role to play in the analysis, not in the sense of Plaintiffs' entitlements, but in the sense of what the government may not do. The government may not absolutely prohibit the exercise of a constitutional right. That much is the Supreme Court's teaching, in finding that a ban on the use of firearms for self-defense, without more, conflicts with the constitutional guarantee and must therefore be struck down. *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2818 (2008).

Whatever else the Defendants might do to regulate the right to carry firearms, they cannot ban the carrying of firearms by law abiding people for the purpose of self-defense when social order has broken down—the absolute core of the Second Amendment's guarantee.

Defendants' amici Brady Center's derisive mis-characterization of Plaintiffs arguments, as seeking a right to form "gangs" or "squads of vigilantes . . . arming themselves with assault weapons and patrolling" a riot, or to become "protestors carrying deadly weapons" who "take to the streets," Brady Br. at 2 and 6, are not well-taken. Neither is the irresponsible suggestion that Plaintiffs seek to enable individuals "to take up arms against the authorities." Brady Br. at 18 n.8.

Nothing in Plaintiffs' complaint seeks to vindicate a right to engage in vigilante patrols, or armed protest during emergencies, and absolutely nothing in Plaintiffs' complaint challenges the State's authority to disperse unlawful assemblies. The standards for restricting the First

Amendment right of assembly at a time of public emergency or riot are unquestioned by this case. This case has nothing to do with "taking to the streets." Individuals participating in an unlawful assembly may be arrested, regardless of whether they are armed, and nothing in Plaintiffs' arguments questions that proposition whatsoever. Anyone who would "take up arms against the authorities" would not look to this Court for permission to do so.

To groups like the Brady Center, who believe that even the possession of guns inside the home may be banned, every armed individual is an incipient criminal or at least too unaccountably irresponsible to use firearms. But the Constitution requires the government to make a distinction between law-abiding individuals, who may have guns, and criminals, who may not. And that distinction must be honored wherever the right of self-defense is implicated, even, and indeed especially, during times of public emergency.

II.     THE SECOND AMENDMENT IS NOT LIMITED TO THE HOME.

"[T]he core right identified in *Heller* [is] the right of a law-abiding, responsible citizen to possess *and carry* a weapon for self-defense." *United States* v. *Chester*, __ F.3d __, 2010 U.S. App. LEXIS 26508 at *26 (4th Cir. Dec. 30, 2010) (emphasis removed and added).

This should be the end of the matter, confirming what Plaintiffs have detailed in their summary judgment brief: the Supreme Court has carefully considered the meaning of the term "bear arms," and concluded it guarantees a right to "carry" arms subject to some obvious restrictions. For example, the state may regulate the manner of carrying guns, and may also impose time, place and manner restrictions on the right.[2]

---

[2] Contrary to Defendants' suggestions, the "time" for suspending Second Amendment rights cannot be whenever people most urgently need to exercise the right of self-defense.

Nonetheless, and despite the Supreme Court's observation that the right to keep and bear arms protects activities such as hunting, *Heller*, 128 S. Ct. at 2801; *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3042 n.27 (2010), and may be restricted in some specific "sensitive places" presumably outside the home, *Heller*, 128 S. Ct. at 2817; *McDonald*, 130 S. Ct. at 3047 (there are no "sensitive places" inside a home), Defendants and their amici persist in maintaining that *Heller*'s holding is limited to the home. The arguments are unavailing.

Defendants and their amici's insistence that the Second Amendment extends no further than the home, because that is the only context in which the Supreme Court has yet to review the Second Amendment, not only contradicts the clear language of *Heller* and *McDonald* with respect to the meaning of "bear arms" and relating to "sensitive places," but is also illogical. Under that reasoning, *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137 (1803) must have been limited to cases concerning the President's delivery of judicial commissions.

Indeed, *Heller* begins by instructing that "[i]n interpreting [the Second Amendment], we are guided by the principle that the Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *Heller*, 128 S. Ct. at 2788 (citation and internal quotation marks omitted). Accordingly, *if* the Supreme Court has truly never discussed the Second Amendment's application beyond the home, the burden would be upon Defendants and their amici to explain how it is that eighteenth-century Americans understood their right to carry arms was so radically limited. Plaintiffs are unaware of any such historical record, and none is offered. Defendants and their amici offer absolutely no argument, let alone historical evidence, for the proposition that the right to arms was understood in 1791 as extending no further than one's door.

4

Indeed, the Brady Center has long championed the erroneous, now-rejected view the Second Amendment guarantees only a right to have arms in connection with state-sanctioned or directed military service. Accepting Brady's interpretation of the Second Amendment, it can hardly describe a right limited to one's home.

But the claim that the Supreme Court has never examined the Second Amendment in a public context is also factually incorrect. The Second Amendment's application outside the home dates back to *United States* v. *Miller*, 307 U.S. 174 (1939), in which the Supreme Court remanded for further proceedings the question of whether a sawed-off shotgun qualified as a constitutionally-protected arm. The shotgun came within federal purview because it had allegedly been transported from Claremore, Oklahoma to Siloam Springs, Arkansas, *id.* at 175—obviously outside Miller's home, yet potentially under the Second Amendment's protection.

Finally with respect to this point, Brady's emphasized citation of the Supreme Court's command that the District of Columbia issue Heller "a license to carry [his handgun] in the home," Brady Br. at 7-8 (quoting *Heller*, 128 S. Ct. at 2822) (footnote omitted), is at best disingenuous. Heller challenged former D.C. Code § 22-4504(a) (2008), which provided that carrying a gun *in one's home* without a permit constituted a misdemeanor offense, separate and apart from the felony offense of carrying a gun in public. Former D.C. Code § 22-4506 (2008) provided for a license to carry issued at the police chief's discretion, although licenses were never issued. Heller did not seek a permit to carry a handgun in public. *See Parker* v. *District of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007), *aff'd sub nom Heller*.

5

III.  THE FOURTH CIRCUIT HAS HELD THAT THE SECOND AMENDMENT RIGHTS OF LAW-ABIDING, RESPONSIBLE INDIVIDUALS ARE SUBJECT TO STRICT SCRUTINY REVIEW.

"[W]e agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment." *Chester*, 2010 U.S. App. LEXIS 26508 at *24 (citations omitted).[3] Turning to the available First Amendment standards, the Fourth Circuit applied intermediate, rather than strict scrutiny, to a domestic violence misdemeanant only because it viewed the Second Amendment's core as reaching "*law-abiding, responsible citizen[s].*" *Id.* at *26 (emphasis original).

As Plaintiff here are law-abiding, responsible citizens, the law must be subjected to strict scrutiny review, in the event the Court believes a standard of review analysis is even necessary for a law that literally and directly conflicts with the core of the Second Amendment right.

Of course, *Chester*'s adoption of strict and intermediate scrutiny standards in Second Amendment cases vitiates Defendants' proposed "no set of circumstances" test, drawn from *United States* v. *Salerno*, 481 U.S. 739, 745 (1987), as well as the Brady Center's quixotic "reasonable regulation" test. Each merits little consideration.

With regards to the *Salerno* test, it is notable that Judge Davis dissented from the Fourth Circuit's adoption of a First Amendment framework for the Second Amendment specifically

---

[3]The Fourth Circuit stands on strong historical footing following this trend. Abuse of First and Second Amendment rights have long been viewed as similar. *See Commonwealth v. Blanding*, 20 Mass. 304, 314 (1825) ("The liberty of the press was to be unrestrained, but he who used it was to be responsible in case of its abuse; like the right to keep fire arms, which does not protect him who uses them for annoyance or destruction."); *Respublica v. Oswald*, 1 U.S. (1 Dall.) 319, 330 n.* (Pa. 1788) ("The right of publication, like every other right, has its natural and necessary boundary; for, though the law allows a man the free use of his arm, or the possession of a weapon, yet it does not authorize him to plunge a dagger in the breast of an inoffensive neighbour.").

6

Case 5:10-cv-00265-H   Document 73   Filed 01/10/11   Page 10 of 15

because he wanted to preserve *Salerno*'s application to Second Amendment cases. *Chester*, 2010 U.S. App. LEXIS 26508 at *40-42 (Davis, J., concurring in judgment). As noted previously by Plaintiffs, *Salerno* by its own terms is incompatible with a First Amendment framework, *Salerno*, 481 U.S. at 745. Indeed, *Salerno* is incompatible with any test that, like strict scrutiny, requires that there be no less restrictive alternative, *Ashcroft* v. *ACLU*, 542 U.S. 656, 666 (2004); or that like intermediate scrutiny, requires the government demonstrate "a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." *Chester*, 2010 U.S. App. LEXIS 26508 at *27 (quoting *Bd. of Trs. of State Univ. of N.Y.* v. *Fox*, 492 U.S. 469, 480 (1989)). Under both tests, a law that permissibly reaches some valid applications is nonetheless unconstitutional where room remains to narrow its impact.

Since *Chester* explicitly joins other circuits in adopting a First Amendment framework for the Second Amendment, the Brady Center's proposed test, based on supposed "key differences between the First and Second Amendments," Brady Br. at 21, need not detain the Court for long.[4] *Chester*, in adopting both strict and intermediate scrutiny, the latter of which it applied, also flatly rejected Brady's theory that the Supreme Court "foreclosed any form of heightened scrutiny that would require the government to ensure that firearms legislation has a tight fit between means and ends." Brady Br. at 20. Brady claims that "[g]iven the grave risks posed by guns, requiring that the government demonstrate a tight 'fit' would unduly restrict the

---

[4]The Supreme Court also rejected Brady's contention that the Second Amendment is entitled to less protection because guns are uniquely dangerous. "The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and the prosecution of crimes fall into the same category." *McDonald*, 130 S. Ct. at 3045. "Like the First, [the Second Amendment] is the very *product* of an interest-balancing by the people . . ." *Heller*, 128 S. Ct. at 2821 (emphasis original).

7

State's broad police power authority to protect the public from harm." Brady Br. at 22. But the Fourth Circuit in *Chester* explicitly demanded that "the government must demonstrate under the intermediate scrutiny standard that there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective." *Chester*, 2010 U.S. App. LEXIS 26508 at *27.

Brady's proposition of a "reasonable regulation" test is based on the manner in which state courts have allegedly applied analogous state right to arms provisions.[5] Plaintiffs would disagree with this assessment of how state courts evaluate right to arms provisions. *See, e.g.* David Kopel & Clayton Cramer, *State Court Standards of Review for the Right to Keep and Bear Arms*, 50 SANTA CLARA L. REV. 1 (2010). But having federal courts defer to state authorities on the question of how to best secure a federal constitutional right contradicts the very logic of the Fourteenth Amendment, which was ratified precisely because state courts were not upholding basic civil rights, including the right to keep and bear arms. Brady errs in claiming "that the federal Constitution sets the lower – not upper – limits of constitutional rights." Brady Br. at 16. Obviously, the Fourteenth Amendment was ratified upon the contrary proposition.

In any event, the "reasonable regulation" standard is precluded by *Heller*'s explicit rejection of rational basis. There is simply no difference between rational basis review and amici's description of this allegedly new test makes it clear that it speaks of rational basis review. Amici offer that this test "'presumes' the lawfulness of a wide gamut of gun laws," Brady Br. at 21, and that whatever a legislature deems reasonable should be upheld: "firearm regulation is best suited for the legislative arena, not the courts." *Id.* at 26. Brady believes that only a law

---

[5]Ironically, Brady fabricates a test based on interpretations of state constitutions, yet claims "Plaintiffs commit the error of reading state and federal constitutions coterminously." Brady Br. at 16.

8

completely banning the exercise of Second Amendment rights would fail "reasonable regulation" review, but this is hardly consistent with the level of protection afforded fundamental rights. As the Supreme Court recognized in the First Amendment context, "[i]t is of no moment that the statute does not impose a complete prohibition. The distinction between laws burdening and laws banning speech is but a matter of degree." *United States* v. *Playboy Entm't Group*, 529 U.S. 803, 812 (2000). What Brady does not notice is that if there *is* a right to have and carry guns for self-defense, then the challenged laws would fail its proposed "reasonable regulation" test, since they flatly prohibit the carrying of guns, and permit the prohibition of firearm and ammunition sales.

To the extent a means-ends level of scrutiny is required to resolve this case, *Chester* mandates that the proper standard would be strict scrutiny. Defendants would thus be required to demonstrate that the challenged provisions are narrowly tailored to achieve a compelling government purpose, and that no less restrictive alternative is available. Pltfs. Summary Judgment Br. at 16. As Defendants and their amici capably demonstrate, the government has many valid means at its disposal to control assembly and travel during a state of emergency, achieving all of its interests without infringing upon Second Amendment rights. Anyone who engages in criminal activity, fails to disperse in response to a valid order, or intentionally ventures out in areas subject to legitimate emergency traffic control may be arrested regardless of whether he or she is armed. There is simply no need to deprive responsible, peaceful people of the means of self-defense to satisfy the state's interests during an emergency.[6]

---

[6]Defendants' affidavits speculate that gun possession by law abiding individuals would make the government's efforts to keep the peace more difficult, but this merely restates the generalized objection to Second Amendment rights.

9

## CONCLUSION

Defendants' and their amici's arguments were wrong before the Fourth Circuit issued its opinion in *Chester*. They are now clearly foreclosed. Defendants' motions for summary judgment, like their motions to dismiss the complaint, must be denied.

Dated: January 10, 2011                    Respectfully submitted,

/s/ Alan Gura                              /s/ Andrew T. Tripp
Alan Gura                                  Kearns Davis
Gura & Possessky, PLLC                     N.C. State Bar No. 22014
101 N. Columbus Street, Suite 405          kdavis@brookspierce.com
Alexandria, VA 22314                       Andrew T. Tripp
703.835.9085/Fax 703.997.7665              N.C. State Bar No. 34254
                                           atripp@brookspierce.com
                                           BROOKS, PIERCE, MCLENDON,
*Counsel for Plaintiffs*                      HUMPHREY & LEONARD, L.L.P.
                                           1600 Wachovia Center
                                           150 Fayetteville Street
                                           Raleigh, NC 27601
                                           Telephone: 919-839-0300
                                           Facsimile: 919-839-0304

                                           *Local Civil Rule 83.1 Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of January, 2011, I electronically filed the foregoing Memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew T. Tripp
Kearns Davis
Brooks, Pierce, McLendon
   Humphrey & Leonard, L.L.P.
P.O. Box 1800
Raleigh, NC 27602

Walter W. Pitt, Jr.
Kevin G. Williams
Bell, Davis & Pitt
P.O. Box 21029
Winston-Salem, NC 27120

Henry W. Jones, Jr.
Lori P. Jones
Jordan Price Wall Gray Jones &
   Carlton, PLLC
1951 Clark Avenue
P.O. Box 10669
Raleigh, NC 27605

Mark A. Davis
Special Deputy Attorney General
North Carolina Dept. of Justice
P. O. Box 629
Raleigh, NC 27602

/s/Alan Gura
Counsel for Plaintiffs